■ WILLIAM PRIESTLY, Appellant-Respondent, v MONTEFIORE MEDICAL CENTER/EINSTEIN MEDICAL CENTER et al., Respondents-Appellants. MONTEFIORE MEDICAL CENTER, Third-Party Plaintiff-Respondent-Appellant, v KEYSPAN ENERGY MANAGEMENT, INC., Third-Party Defendant-Respondent. [781 NYS2d 506]—

Order, Supreme Court, Bronx County (Janice L. Bowman, J.), entered on or about February 6, 2004, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim and denied defendant and third-party plaintiff Montefiore Medical Center's cross motion for summary judgment on its claims for contractual and common-law indemnification against third-party defendant Keyspan Energy Management, unanimously modified, on the law, so as to grant plaintiff's motion for partial summary judgment and grant Montefiore's cross motion for contractual indemnification against Keyspan, and otherwise affirmed, without costs.

Plaintiff, an electrician employed by the subcontractor on a demolition project, was injured in a fall from a ladder that was permanently affixed to a water cooling tower and provided the only means of access to the motors that he was disconnecting as part of the project. He testified that to reach the motors, he had to climb two sets of ladders to the subroof and then ascend the approximately 20-foot, steel access ladder affixed to the water cooling tower. The ladder was 26 inches wide, with ³/₄-inch round

rungs, some of which were worn in the middle. There were no side railings so climbing was done hand over hand. When plaintiff mounted the access ladder, he told his supervisor that it was loose and wobbly and that he wanted a tie-down, a rope or a helper with him. The supervisor said there were no tie-downs or ropes on the job and no helpers available, and told plaintiff to go do his job.

Plaintiff succeeded in climbing the ladder and disconnecting the motors. As he descended, however, the ladder started swaying and he fell, striking the steel girder at the base of the ladder, and landing on the subroof. Plaintiff testified that there also was a slippery substance on the rungs.

The supervisor, an employee of the subcontractor, testified that an employee would not have been told to wear a tie-off but would have been told that tie-offs and safety harnesses were in the gang box. He said plaintiff's job would not have required a helper, a tie-off, a safety harness or a rope and he did not recall plaintiff asking him for safety devices. However, he showed plaintiff the gang box containing harnesses and tie-offs, 15 to 20 feet from the access ladder. He also testified that he inspected the ladder before the end of the day of plaintiff's accident and found that it was not loose and did not move in any way.

The motion court erred in denying plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim on the ground that issues of fact exist as to whether plaintiff was provided with safety devices but refused to use them and whether the ladder he used was defective on the date of the accident. There is no evidence that plaintiff "disobeyed an immediate instruction to use a harness or other actually available safety device" (*DePalma v Metropolitan Transp. Auth.*, 304 AD2d 461, 461 [2003]). Nor is the fact that safety devices may have been available in the gang box 20 feet from the access ladder sufficient to allow defendants to escape liability, since the devices were not "ready for immediate use but were simply 'available for use somewhere in the area of the construction site' " (*id.* at 462, quoting *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 526 [1985]).

The permanently affixed ladder from which plaintiff fell was the only means of gaining access to his elevated worksite and as such was a "device" within the meaning of Labor Law § 240 (1) (*see Crimi v Neves Assoc.*, 306 AD2d 152, 153 [2003]). Plaintiff's testimony that as he descended the ladder it wobbled and swayed, that it was only two feet wide and lacked side rails for gripping, and that there was a slippery substance on the very narrow, round rungs establishes that his injuries were "at least

partially attributable to defendant's failure to take statutorily mandated safety measures to protect him from risks arising from an elevation differential, and thus that grounds for the imposition of liability pursuant to Labor Law § 240 (1) were established" (*Nunez v Bertelsman Prop., Inc.*, 304 AD2d 487, 488 [2003] [plaintiff fell down staircase without handrails connecting two levels of scaffolding]; *see also Crimi, supra* [plaintiff fell down steep ladder with very narrow rungs]; *Oprea v New York City Hous. Auth.*, 226 AD2d 310 [1996] [plaintiff slipped on water tower ladder lacking proper safety devices]).

The supervisor's testimony that after the accident he found the ladder to be stable does not raise an issue of fact as to whether plaintiff's actions were the sole proximate cause of his accident so as to defeat his claim to protection under the statute (*see Sanango v 200 E. 16th St. Hous. Corp.*, 290 AD2d 228, 228 [2002]).

The court erred in denying defendant Montefiore's cross motion for summary judgment on its claims of contractual indemnification against third-party defendant Keyspan. Pursuant to their contract, Keyspan agreed to indemnify Montefiore against all losses arising out of the performance of the work to the extent that they were not caused by Montefiore's negligence. There is no evidence that Montefiore in any way supervised or controlled plaintiff's work. Moreover, the contract required Keyspan to furnish all tools and equipment necessary to complete the project, to establish, implement and observe all applicable safety measures, and to maintain the work site in a safe and orderly fashion. Thus, Montefiore established its freedom from negligence and is entitled to indemnity under the contract (*see Warnett v A.J. Pegno Constr. Corp.*, 1 AD3d 207, 207-208 [2003]).

However, the court properly denied Montefiore's motion for summary judgment on its claim of common-law indemnity, which, in addition to requiring proof of Montefiore's freedom from negligence, requires proof of some negligence that contributed to causing plaintiff's accident on the part of Keyspan, the proposed indemnitor (*see Correia v Professional Data Mgt.*, 259 AD2d 60, 65 [1999]). The record evidence on this motion fails to sufficiently establish that element. Concur—Tom, J.P., Saxe, Ellerin, Marlow and Catterson, JJ.